## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## NORTHERN DIVISION

ELIZABETH GIRARD                                         PLAINTIFF

V.                        No. 3:20-CV-00306-JTR

KILOLO KIJAKAZI, Acting Commissioner
Social Security Administration[1]                      DEFENDANT

## **ORDER**

### I.   Introduction

Plaintiff, Elizabeth Girard ("Girard"), applied for disability benefits on April 12, 2018, alleging disability beginning on January 1, 1997. (Tr. at 10). After conducting a hearing, the Administrative Law Judge ("ALJ") denied her application on October 18, 2019.[2] (Tr. at 23-24). The Appeals Council denied her request for review on August 13, 2020, making the ALJ's denial of Girard's application for benefits the final decision of the Commissioner. (Tr. at 1).

For the reasons stated below, the Court[3] affirms the decision of the Commissioner.

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted for Andrew Saul as defendant in this action. See Fed. R. Civ. P. 25(d).

[2] At the hearing, Girard amended her alleged onset date to the date she filed her application, which was April 12, 2018. (Tr. at 10).

[3] The parties have consented in writing to the jurisdiction of a United States Magistrate Judge.

## II.    The Commissioner's Decision

The ALJ found that Girard had not engaged in substantial gainful activity since the application date of April 12, 2018.[4] (Tr. at 12). The ALJ found, at Step Two, that Girard had the following severe impairments: degenerative disc disease of the cervical spine, bilateral carpal tunnel syndrome, osteoarthritis in both knees, degenerative joint disease of the right shoulder (status post acromioclavicular repair), obesity, bipolar disorder, and generalized anxiety disorder. *Id*.

After finding that Girard's impairments did not meet or equal a listed impairment (Tr. at 13-15), the ALJ determined that Girard had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with exceptions: (1) she can no more than frequently reach, handle, and finger with both upper extremities; (2) she requires a sit/stand option that allows her to alternate between standing and sitting at will; (3) she retains the mental ability to understand, remember, and carry out simple job instructions and make judgments in simple work-related situations; (4) she can respond appropriately to coworkers and

---

[4]The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

supervisors and respond appropriately to minor changes in the usual work routine; and (5) she should avoid interaction with the general public (defined as dealing with strangers and customers in a sales type position). (Tr. at 16).

The ALJ determined that Girard was unable to perform any of her past relevant work. (Tr. at 21-22). At Step Five, the ALJ relied upon Vocational Expert ("VE") testimony to find that, based on Girard's age, education, work experience and RFC, jobs existed in significant numbers in the national economy that she could perform, including positions as addresser, document preparer, and table worker. (Tr. at 23). Thus, the ALJ concluded that Girard was not disabled. *Id*.

### III.   Discussion

#### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however,

"merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

## B.   Girard's Arguments on Appeal

Girard contends that the evidence supporting the ALJ's decision to deny her application for benefits is less than substantial. She argues that the RFC did not fully incorporate her limitations and that the ALJ erred at Step Five.

4

Girard had pain in her neck, shoulders, wrists, and knees. A February 2018 x-ray of Girard's cervical spine was normal. (Tr. at 18, 288, 691). However, a March 2018 MRI of Girard's cervical spine showed herniated disc and mild annular bulge. (Tr. at 18, 302). A neurologist said that the condition in Girard's cervical spine was not severe enough to warrant surgical intervention, and her doctors treated Girard conservatively with pain medications. (Tr. at 18, 305). X-rays of the shoulders showed mild-to-moderate conditions, and a nerve conduction study revealed moderate-to-severe carpal tunnel syndrome bilaterally (Tr. at 290-299). X-rays of Girard's knees showed mild-to-moderate conditions as well. (Tr. at 663-666).

Girard's doctors prescribed medications for pain, recommended physical therapy, and suggested splints for her wrists. (Tr. at 300-305). Girard said that she treated her symptoms with hot showers and hot/cold compresses. (Tr. at 17). The need for only conservative treatment contradicts allegations of disabling conditions. *Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993).

Girard said she could do things like play games on her phone, do light chores, shop in stores, drive a car, and play with her dog. (Tr. at 20, 224-227). She also said she walked her dog for exercise. (Tr. at 20). Such daily activities undermine her claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

Girard also had mental health issues, and she saw a therapist regularly who prescribed a variety of medications. Girard was often non-compliant with her medications, and she stopped going to therapy altogether a few months before her hearing. (Tr. at 20, 625, 634-638, 734, 742). She did endorse improvement over the course of her treatment: on September 20, 2017, February 7, 2018, March 12, 2018, September 19, 2018, and September 26, 2018, Girard told her therapist that she was doing better. (Tr. 396-397, 417-418, 425-428, 637-642). Conversely, Girard said that when she did not take medication, she felt down and depressed, and that her anxiety was higher without medication. (Tr. at 442-445, 624-628). A claimant's non-compliance with treatment is a legitimate consideration in evaluating the validity of her alleged disability. *See Holley v. Massanari*, 253 F.3d 1088, 1092 (8th Cir. 2001). Non-compliance and improvement with proper treatment suggest that Girard's mental health problems were not disabling.

For her first point on appeal, Girard asserts that the limitation to frequent reaching, handling, and fingering in the RFC did not fully account for her shoulder problems and carpal tunnel syndrome.[5] (Tr. at 16). However, the ALJ did a good

---

[5]A claimant's RFC represents the most she can do despite the combined effects of all of her credible limitations and must be based on all credible evidence. *McCoy v. Astrue*, 648 F.3d 605, 614 (8th Cir. 2011). In determining the claimant's RFC, the ALJ has a duty to establish, by competent medical evidence, the physical and mental activity that the claimant can perform in a work setting, after giving appropriate consideration to all of her impairments. *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996).

job of discussing the objective evidence showing no more than moderate conditions, and he pointed out that treatment was conservative (one doctor diagnosed moderate-to-severe carpal tunnel syndrome but then merely suggested she wear splints and follow-up as needed). (Tr. at 17-20, 300-305). He discussed Girard's ability to perform activities that showed she could perform reaching, handling, and fingering at least on a frequent basis. (Tr. at 20).

Furthermore, the ALJ explained how he weighed the opinions of the Disability Determination Services medical experts' opinions.[6] (Tr. at 21). Both medical experts opined that Girard could perform work at the medium exertional level with only occasional reaching. (Tr. at 74-75, 94-95). The ALJ found these opinions to be unpersuasive, stating that Girard was more limited than they suggested. (Tr. at 21). Girard assumes that means the ALJ should have assigned an RFC for no more than occasional reaching, but it is well within an ALJ's discretion to discount some portions of a medical opinion if he sees fit. Where an opinion is only partially consistent with other evidence in the record, an ALJ may give significant weight to some aspects of the opinion while discounting portions of the opinion that are not supported. *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000).

---

[6] Social Security disability claims, while governed by the federal Social Security Administration ("SSA"), are initially processed through a network of local SSA field officers and State agencies (usually called Disability Determination Services ("DDS")).

Moreover, the interpretation of a physician's findings is a factual matter left to the ALJ's authority. *See Mabry v. Colvin*, 815 F.3d 386, 391 (8th Cir. 2016). And the DDS medical opinions contained numerous postural assessments for different body parts: simply because the ALJ said Girard was more limited does not mean he had to reduce her functional capacity with respect to *all* of the postural assessments made by the DDS experts. Girard has not shown that the RFC for frequent reaching, handling, and fingering outstripped her abilities.

Girard also argues that the ALJ's assigned RFC did not account for limitations in concentration, persistence, and maintaining pace. At Step Three, the ALJ found Girard was moderately limited in those areas. (Tr. at 15). Then he assigned an RFC for simple work, with no more than minor changes to the routine, and with no interaction with the public. (Tr. at 16). This Court has found that similar restrictions in the RFC suffice. *Williams v. SSA*, No. 2:18CV00174-BD *12-13 (E.D. Ark. Feb. 25, 2020) (the record as a whole demonstrated claimant could perform a variety of activities requiring concentration, persistence, or pace, so the RFC for work with few variables and little judgment, as well as simple and direct supervision, was sufficient); *Robershaw v. Comm'r of SSA*, NO: 3:20-CV00295-ERE, 2021 WL 4227060, at *4 (E.D. Ark. Sept. 16, 2021) (RFC limitation in type of supervision, complexity of work, and amount of interpersonal contact sufficiently accounted for

moderate problems in concentration, persistence, and maintaining pace). The Eighth Circuit agrees. *See Chismarich v. Berryhill*, 888 F.3d 978, 980-981 (8th Cir. 2018) (moderate difficulties in concentration, persistence, or pace are consistent with an RFC that finds a claimant capable of understanding, remembering, and carrying out simple instructions while performing non-detailed tasks). The ALJ assigned an RFC that incorporated all of Girard's credible limitations.

Finally, Girard contends that the ALJ erred at Step Five. Before relying on VE evidence to support a determination that a claimant is not disabled, the ALJ has an affirmative responsibility at Step Five to ask about "any possible conflict" between VE testimony and the DOT, and to obtain an explanation for any such conflict. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); see Social Security Ruling 00-4p, 2000 WL 1898704 (Dec. 4, 2000). A one-word answer from the VE (such as merely stating he relied on "experience") does not amount to a sufficient explanation. But here, the VE acknowledged a possible conflict regarding the sit-stand option present in the RFC, and then said he relied upon his "past experience with these [and] similar jobs having analyzed, observed, and researched . . ." (Tr. at 59) That clears the bar for resolution of the potential conflict. *Jones-Brinkley v. SSA*, NO: 3:20CV00058-JTK, 2021 WL 371689, at *2-3 (E.D. Ark. Feb. 3, 2021) (VE may rely on his judgment and experience with the jobs in question to resolve any

9

possible conflict); *Stockwell v. Comm'r of SSA*, NO: 3:20CV00393-JTK, 2021 WL 5758876, at \*4-5 (E.D. Ark. Dec. 3, 2021) (ALJ resolved possible Step Five conflict by relying on VE testimony that he based his testimony on his "past experience with similar jobs.").

## IV.   Conclusion

There is substantial evidence to support the Commissioner's decision to deny benefits. The RFC incorporated all of Girard's credible limitations and the ALJ did not err at Step Five. The finding that Girard was not disabled within the meaning of the Social Security Act, therefore, must be, and hereby is AFFIRMED. Judgment will be entered for the Defendant.

ORDERED this 28th day of February, 2022.

_____
UNITED STATES MAGISTRATE JUDGE